IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARGARET TIMM,                                    )
                                                  )
                            Plaintiff,            )
                                                  )
            v.                                    )
                                                  )        2:06-cv-152
MANOR CARE, INC., a/k/a HCR MANOR                 )
CARE, d/b/a HEARTLAND HOME                        )
HEALTHCARE AND HOSPICE,                           )
                                                  )
                            Defendant.            )

## MEMORANDUM OPINION AND ORDER OF COURT

Before the Court for consideration and disposition is DEFENDANT'S MOTION TO
DISMISS, with brief in support (Document Nos. 2 & 3). The issues have been fully briefed, and
the matter is ripe for disposition. *See* Document Nos. 4 & 5. For the reasons which follow, the
Court finds that each count of Plaintiff's Complaint fails to state a claim upon which relief can be
granted. However, the Court will afford Plaintiff an opportunity to file an Amended Complaint
which states a legally sufficient claim for intentional infliction of emotional distress. If Plaintiff
fails to do so, the case will be dismissed with prejudice.

Background

The following background is drawn from the Complaint. Prior to December of 2000,
plaintiff Margaret Timm ("Plaintiff") was employed as the General Manager of the Pittsburgh
branch offices of In Home Health, Inc. Complaint at ¶ 7. On or about December 28, 2000,
defendant Manor Care, Inc. ("Defendant") purchased In Home Health, Inc. and Plaintiff became
Defendant's Director of Home Care. *Id*. at ¶¶ 8, 10. Plaintiff's duties included "management of
operations, financial activities, and human resources responsibilities in the Pittsburgh offices."
*Id*. at ¶ 11. At the time of the alleged acts of discrimination her salary was $91,520.00. *Id*. at ¶
12.

The Complaint alleges that on multiple occasions Plaintiff was told, "You look old," and
that Plaintiff's supervisor told her that she "looked tired and that she looked like she was waiting
around until she could retire." *Id.* at ¶¶ 15-16. It is also alleged that one of Plaintiff's human

resources representatives told Plaintiff "that she should retire and that she should find a less stressful job in health care," and that another employee asked, "Aren't you getting too old for this?"  Complaint at ¶¶ 17-18.  Additionally, the Complaint alleges that "there was a pattern of preferring the younger employees and discriminating against the older employees," and that there was also "a pattern of terminating older workers and replacing them with younger workers." *Id*. at ¶¶ 19, 27.

Plaintiff's employment was terminated on March 31, 2003. *Id*. at ¶ 24.  She was told that her termination was due to mistakes made in an accreditation survey, but Plaintiff alleges that she was told not to work on the accreditation survey, and that the younger employees who were actually responsible for the accreditation survey were not fired. *Id*. at ¶ 21-23.

The Complaint alleges that on September 24, 2003, Plaintiff filed a charge of age discrimination with the Pennsylvania Human Relations Commission ("PHRC"). *Id*. at ¶ 3.  The PHRC found that the charge of discrimination was untimely, albeit by one day, because Plaintiff faxed a copy of her complaint to the PHRC on September 25, 2003, which was "still 181 days after March 28, 2003, the date the Complainant learned that she had been terminated." Defendant's Br., exh. A at unnumbered 2.  Thus, the PHRC dismissed Plaintiff's complaint as untimely filed. *Id*.

On December 14, 2005 Plaintiff filed a three-count Complaint in the Court of Common Pleas of Allegheny County, Pennsylvania.  The Complaint alleges age discrimination, in violation of the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq*. ("PHRA"), (Count 1), wrongful discharge based upon age, in violation of Pennsylvania's public policy (Count 2), and Intentional Infliction of Emotion Distress (Count 3).  Defendant removed the case to this Court pursuant to 28 U.S.C. §§ 1332 and 1441, *i.e*., diversity of citizenship jurisdiction. Document No. 1.  Defendant has filed a Motion to Dismiss in which it contends that each count fails to state a claim upon which relief can be granted.

Standard of Review

When considering a motion to dismiss pursuant to Rule 12(b)(6) the Court accepts as true all well pleaded allegations of fact. *Pennsylvania Nurses Ass'n. v. Pennsylvania State Educ. Ass'n.*, 90 F.3d 797, 799-800 (3d Cir. 1996), *cert. denied*, 519 U.S. 1110 (1997). In addition, the Court must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-movant. *General Motors Corp. v. New A.C. Chevrolet, Inc.,* 263 F.3d 296, 325 (3d Cir. 2001). Dismissal is appropriate only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984); *see also Lorenz v. CSX Corp.*, 1 F.3d 1406, 1411 (3d Cir. 1993).

The Federal Rules of Civil Procedure do not require detailed pleading of the facts on which a claim is based, they simply require "a short and plain statement of the claim showing that the pleader is entitled to relief," which statement is sufficient to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Fed.R.Civ.P. 8(a)(2); *see also Conley v. Gibson*, 355 U.S. 41, 47 (1957). Notwithstanding this standard, the Court "need not credit a complaint's bald assertions or legal conclusions." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997) (internal quotations omitted).

Generally, "to the extent that [a] court considers evidence beyond the complaint in deciding a 12(b)(6) motion, it is converted to a motion for summary judgment." *Anjelino v. New York Times Co.,* 200 F.3d 73, 88 (3d Cir. 1999). However, in resolving a 12(b)(6) motion to dismiss, a court may look beyond the complaint to matters of public record, including court files and records, decisions of government agencies and administrative bodies, and documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion. *Pension Benefit Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196 (3d Cir. 1993).[1] The parties have submitted orders from the underlying PHRC proceedings in support of

---

[1] A federal court sitting in diversity must apply the substantive law as decided by the state's highest court. *Travelers Indem. Co. of Illinois v. DiBartolo*, 131 F.3d 343, 348 (3d Cir. 1997) (citation omitted). When the Pennsylvania Supreme Court has not directly addressed the issue before the Court, the Court must predict how the Pennsylvania Supreme Court would

their respective positions regarding exhaustion of administrative remedies.  Because exhaustion of administrative remedies is essential to Plaintiff's PHRA claim, the Court has considered them without the necessity of converting the pending motion to dismiss into a motion for summary judgment.  *Pension Ben. Guar. Corp. v. White Consol. Indus.,* 998 F.2d 1192, 1196-97 (3d Cir.), *cert. denied*, 510 U.S. 1042 (1994).

Discussion

A.      Age Discrimination In Violation of the PHRA

Defendant contends that the PHRA claim should be dismissed because Plaintiff did not timely file her charge with the PHRC within the requisite 180 day time period.  Defendant's Br. at 5-6.  The Complaint alleges that Plaintiff filed her charge with the PHRC on September 24, 2003.  Defendant contends that this date is incorrect, that the charge was actually filed on September 25, 2003.  *Id*. at 6.  Defendants further contend that September 25, 2003 was 181 days after Friday, March 28, 2003, which is the day that Plaintiff was told that she would be terminated effective Monday, March 31, 2003.  *Id*. at 5-6.

In order to proceed with an action under the PHRA, a complainant must first file an administrative complaint with the PHRC within 180 days after the alleged discriminatory act occurred.  43 Pa. Stat. Ann. § 959(a), (h).  If a complainant fails to file a timely complaint with the PHRC, then he or she is precluded from judicial remedies under the PHRA.  *Woodson v. Scott Paper Co.*, 109 F.3d 913, 925 (3d Cir. 1997).

In order to determine whether Plaintiff's complaint was timely filed with the PHRC, the Court must determine when the limitations period began to run and when the complaint was filed.  Defendant contends that the statute of limitations began to run on March 29, 2003 because it "informed Plaintiff on Friday, March 28, 2003 that she was going to be terminated effective Monday, March 31, 2003."  Defendant's Br. at 5-6 (*citing* Defendant's exh. A).  The PHRC's

---

resolve the issue.  *DiBartolo*, 131 F.3d at 348 (citation omitted).  Applicable decisions of the Superior Court are to be accorded significant weight, and carefully considered *dicta* from the Pennsylvania Supreme Court may also inform the Court's prediction.  *Id*.

4

written decision, as well as Plaintiff's brief, reflect that "on Friday, March 28 [2003], Plaintiff received a telephone call giving her the option of either resigning or being fired on Monday, March 31." Pltf's Br. at 6.  The PHRC found that the limitations period began to run on March 29, 2003 because "the alleged act of harm occurred on March 28, 2003." Defendant's Br., exh. A at unnumbered 2.[2]

Under federal anti-discrimination laws the limitations period for filing an administrative complaint of discrimination generally begins to run "from the date the allegedly unlawful employment practice occurred." *Watson v. Eastman Kodak Company*, 235 F.3d 851, 855 (3d Cir. 2000) (citations and quotation marks omitted).  "However, the last day of employment is not necessarily the date of the adverse employment action." *Id*. at 856.  Our court of appeals holds that under federal anti-discrimination law the "unlawful employment practice" occurs when an employer informs an employee that his or her employment is terminated. *See id.* ("[I]t does not matter that [Plaintiff] was notified of his termination several weeks before his ultimate discharge. As a matter of law, notice of an operative decision of termination is not equivocal merely because it was given in advance of a designated date on which employment terminated.") (citations, quotation marks and ellipsis omitted); *see also Delaware State College v. Ricks*, 449 U.S. 250, 259, 261-62 (1980) (ruling that plaintiff's unlawful termination claim accrued when he initially received the college's notice that he had been denied tenure).  Case law from the Supreme Court of Pennsylvania indicates that these same principles apply to the PHRA. *See Vincent v. Fuller Co.*, 616 A.2d 969, 972 (Pa. 1992) ("We agree with the reasoning underlying [*Ricks* and other federal court] decisions and find it applicable to actions under the Pennsylvania Human Relations Act.").

Plaintiff admits that on Friday, March 28, 2003 she was informed by telephone that her employment would be terminated effective Monday, March 31, 2003.  Pltf's Br. at 6.  Plaintiff contends that the rule of *Ricks* and *Watson* does not apply because she was informed that she had

---

[2] The Court exercises *de novo* review over whether a complain was timely filed with the PHRC. *See Ettinger v. Johnson*, 518 F.2d 648, 652 (3d Cir. 1975).

"the option of either resigning or being fired on Monday, March 31," and that "that is the date of the discriminatory event because that is the date of explicit notice and when the employer had established its official position ..." *Id.* In the view of the Court, Defendant's "resign or be fired" ultimatum is not sufficient to distinguish this situation from *Ricks* and *Watson*. The Court also predicts that were it to decide the issue, the Supreme Court of Pennsylvania would find no basis to distinguish this case from the rule of *Ricks* and *Watson*. *Watson* holds that the claim accrues when an employee is "clearly informed" that his or her employment will be terminated. *Watson*, 235 F.3d at 857. There is no doubt that on Friday, March 28, 2003, Plaintiff was "clearly informed" that her employment would be terminated as of Monday, March 31. Therefore, her claim of age discrimination accrued on Friday, March 28, 2003, and the 180 day statute of limitations began to run on Saturday, March 29, 2003. *See* 1 Pa. Code § 31.12 ("in computing a period of time prescribed ..., the day of the act, event or default after which the designated period of time begins to run may not be included.").

In order for Plaintiff to have timely filed her complaint with the PHRC, it must have been filed on or before September 24, 2003, which was a Wednesday.[3] The Complaint alleges that Plaintiff's charge of discrimination was filed with the PHRC on September 24, 2003, which would be timely. Defendant asserts that this date is incorrect and directs the Court's attention to the PHRC's February 14, 2005 determination that Plaintiff's charge was untimely.[4] Defendant's

---

[3] "The last day of the period so computed shall be included, unless it is Saturday, Sunday or a legal holiday in this Commonwealth, in which event the period shall run until the end of the next day which is neither a Saturday, Sunday nor a holiday." 1 Pa. Code § 31.12.

[4] The PHRC addressed the issue of timeliness twice. In the first order the PHRC found that the charge was timely, but in the second order the PHRC found that the charge was not timely. Specifically, in its decision of January 13, 2005, the PHRC treated September 29, 2003 as the date of filing because it supposedly received the charge on that day. *See* Pltf's Br., exh. A at unnumbered 2. In the second decision on February 14, 2005, the PHRC treated September 25, 2003 as the date of filing because Plaintiff represented that she faxed it to the PHRC on that day. *See* Defendant's Br., exh. A at unnumbered 2. Plaintiff had earlier contended that the charge was timely mailed, but the date of mailing is not relevant to timeliness. *See* Pltf's Br., exh. A at unnumbered 2.

Br. at 6 n.3.  Plaintiff argued before the PHRC that she faxed a copy of her charge of discrimination to the PHRC on September 25, 2003.  Defendant's Br., exh. A at unnumbered 2. The PHRC accepted Plaintiff's representation about when the charge was faxed, but nevertheless found that September 25, 2003 was one day too late.  *Id.*

In her brief, Plaintiff makes no reference whatsoever to the inconsistency between the date of filing alleged in her Complaint (September 24, 2003) and the date of filing identified by the PHRC in its second order (September 25, 2003).  Plaintiff also fails to challenge Defendant's assertion that the date alleged in the Complaint is incorrect.  Instead, Plaintiff focuses on whether Defendant provided sufficient notice of its intent to terminate her employment unless she resigned, *i.e.*, Plaintiff focuses on when the 180 day limitations period began, and does not address when it ended.  *See* Pltf's Br. at 5-7.  Therefore, it is uncontested that Plaintiff's charge of discrimination was filed with the PHRC on September 25, 2003, which is 181 days after the statue of limitations began to run.  Accordingly, the Court finds and rules that Plaintiff's charge of discrimination was untimely, that Plaintiff failed to exhaust her administrative remedies before the PHRC, and that Count I fails to state a claim upon which relief can be granted.

B.      Wrongful Discharge

Count II of the Complaint alleges that the termination of Plaintiff based upon her age "is violative of public policy which asserts that older employees should be discriminated against based on their age."  Complaint at ¶ 32.  Defendant contends that "such a claim is not cognizable because Plaintiff is afforded a statutory remedy under the PHRA," and that "[t]he PHRA procedures are the mandatory means for enforcing the anti-discrimination provisions of the PHRA."  Defendant's Br. at 8.

In *Clay v. Advanced Computer Applications, Inc.*, 559 A.2d 917 (Pa. 1989), the Supreme Court of Pennsylvania held that "the PHRA provides a statutory remedy that precludes assertion of a common law tort action for wrongful discharge based upon discrimination."  *Clay*, 559 A.2d at 918.  Because the plaintiffs "failed to pursue their exclusive statutory remedy for sexual harassment and discrimination in the workplace, they are precluded from relief."  *Id.* at 919.

Although *Clay* addresses only sex discrimination, its reasoning clearly applies to age discrimination.  Therefore, the Court predicts that if it were to decide the issue, the Supreme Court of Pennsylvania would rule that the PHRA provides the exclusive remedy for age discrimination claims, and that an age discrimination claim based on Pennsylvania's public policy exception to the at-will employment doctrine is barred by the PHRA.  Thus, the Court finds and rules that Court II of the Complaint fails to state a claim upon which relief can be granted.

C.      Intentional Infliction of Emotional Distress

Count III of the Complaint alleges that Defendant's actions "were extreme and outrageous as they followed years of positive reviews and loyal work," that Defendant "fired an employee who had been loyal to their company for years and who was 60 years old and unlikely to secure similar employment elsewhere," and that Plaintiff "suffered severe emotional and mental distress which produced symptoms of sleeplessness, nausea and diarrhea."  Complaint at ¶ 37-39.  Defendant contends that Plaintiff's allegations of a loss of employment due to age discrimination do not rise to the requisite level of outrageousness to support a claim for intentional infliction of emotional distress.  Defendant's Br. at 10-11.  The Court agrees.

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must prove that: (1) the defendant engaged in conduct that was extreme and outrageous; (2) the conduct was intentional or reckless; (3) the conduct caused emotional distress; and (4) the distress was severe. *Olender v. Township of Bensalem*, 32 F. Supp. 2d 775, 791-92 (E.D. Pa.), *aff'd.*, 202 F.3d 254 (3d Cir. 1999).  The Third Circuit has noted that it is "extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Clark v. Township of Falls,* 890 F.2d 611, 623 (3d Cir. 1989) (*quoting Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)).  Our court of appeals has also observed that "the only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context is where an employer engaged in both sexual harassment and other retaliatory behavior against an

employee." *Cox*, 861 F.2d at 395-96 (*citing Bowersox v. P.H. Glatfelter Co.*, 677 F. Supp. 307, 311 (M.D. Pa. 1988)).

With respect to the first element, the Third Circuit has observed that "[t]he conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Cox,* 861 F.2d at 395 (*quoting Buczek v. First Nat'l Bank of Mifflintown*, 531 A.2d 1122, 1125 (Pa. Super. 1987)). Initially, the role of the court is to determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. If reasonable persons may differ, the issue goes to the jury, subject to the control of the court, to determine whether the conduct is sufficiently extreme and outrageous to incur liability. Restatement (Second) of Torts § 46, cmt. h; *see also Gibbs v. Ernst*, 615 A.2d 851, 856 (Pa. Commw. 1992), *rev'd in part on other grounds*, 647 A.2d 882 (Pa. 1994) (finding that determination of whether defendants' failure to disclose vital negative information about plaintiffs constituted outrageous and extreme conduct was an evidentiary question for trier of fact).

Courts routinely reject claims of intentional infliction of emotional distress which arise out of allegedly improper employment practices, including cases of unlawful discrimination. *See Cox*, 861 F.2d at 395; *Fugarino v. Univ. Svcs.*, 123 F. Supp. 2d 838, 844-45 (E.D. Pa. 2002) (dismissing claim in context of sexual harassment and retaliation action); *Hampton v. Tokai Fin. Svcs., Inc.*, No. Civ. A. 98-5074, 1999 WL 83934, at *3 (E.D. Pa. Feb. 18, 1999) ("While reprehensible, employment discrimination does not support an intentional infliction of emotional distress claim under applicable case law."); *Coney v. Pepsi Cola Bottling Co.*, No. Civ. A. 97-2419, 1997 WL 299434, at *1 (E.D. Pa. May 29, 1997) (dismissing IIED claim and noting that "highly provocative racial slurs and other discriminatory incidents do not amount to actionable outrageous conduct."); *Clay v. Advanced Computer App., Inc.*, 536 A.2d 1375, 1384-85 (Pa. Super. Ct. 1988) (*en banc*), *rev'd in part on other grounds*, 559 A.2d 917 (Pa. 1989).

As mentioned above, the Complaint alleges that on multiple occasions Plaintiff was told, "You look old," and that Plaintiff's supervisor told her that she "looked tired and that she looked like she was waiting around until she could retire." Complaint at ¶¶ 15-16. It is also alleged that

one of Plaintiff's human resources representatives told Plaintiff "that she should retire and that she should find a less stressful job in health care," and that another of Defendant's employees asked, "Aren't you getting too old for this?" *Id*. at ¶¶ 17-18. Additionally, the Complaint alleges that "there was a pattern of preferring the younger employees and discriminating against the older employees," and that there was also "a pattern of terminating older workers and replacing them with younger workers." *Id*. at ¶¶ 19, 27. While such conduct is not to be condoned, it is also not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Cox,* 861 F.2d at 395. Therefore, the Court finds and rules that Count III fails to state a claim upon which relief can be granted.

D.      Leave to Amend

If a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id*. Even if a plaintiff does not seek leave to amend her complaint after the defendant moves for dismissal, unless the district court finds that amendment would be inequitable or futile, the Court must inform the plaintiff that she has leave to amend the complaint within a set period of time. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103 (3d Cir. 2002). The district court may dismiss the action if the plaintiff does not file an amended complaint within that time, or if the plaintiff files a notice of her intent to stand on the complaint.

The Court finds and rules that it would be futile to allow Plaintiff to amend the allegations of Counts I and II. The former is barred by Plaintiff's failure to exhaust her administrative remedies, and the latter is based on a legal theory which is not recognized under Pennsylvania law. As for Count III, although viable claims of intentional infliction of emotional distress are rarely recognized in the workplace, it is unlikely but possible that Plaintiff could state a claim upon which relief can be granted. Therefore, on or before March 31, 2006 Plaintiff shall

either 1) file an Amended Complaint which states a legally sufficient claim for intentional infliction of emotional distress, or 2) file a notice of her intent to stand on the allegations of Count III as drafted.

Conclusion

For the reasons hereinabove stated, the Court finds that each count of the Complaint fails to state a claim upon which relief can be granted.  On or before March 31, 2006 Plaintiff shall either file an Amended Complaint which states a legally sufficient claim for intentional infliction of emotional distress, or file a notice of her intent to stand on the allegations of Count III as drafted.  If Plaintiff elects to file an Amended Complaint she shall contemporaneously show cause regarding whether the amount in controversy due to alleged intentional infliction of emotional distress meets the jurisdictional threshold of $75,000.  An appropriate Order follows, and a separate Show Cause Order shall be entered.

McVerry, J.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARGARET TIMM, ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | |
| ) | **2:06-cv-152** |
| MANOR CARE, INC., a/k/a HCR MANOR ) | |
| CARE d/b/a HEARTLAND HOME ) | |
| HEALTHCARE AND HOSPICE, ) | |
| ) | |
| **Defendant.** ) | |

## ORDER OF COURT

AND NOW, this 20th day of March, 2006, in accordance with the foregoing Memorandum Opinion the Court finds and rules that each count of Plaintiff's Complaint fails to state a claim upon which relief can be granted.  On or before **March 31, 2006** Plaintiff shall either file an Amended Complaint which states a legally sufficient claim for intentional infliction of emotional distress, or file a notice of her intent to stand on the allegations of Count III as drafted.

A separate Show Cause Order regarding subject matter jurisdiction under 28 U.S.C. § 1332 shall be entered.

BY THE COURT:

s/  Terrence F. McVerry
United States District Court Judge

cc:   Daniel P. Lynch, Esquire           Robert B. Cottington, Esquire
      Email: dlynch@lynchweis.com        Email: rcottington@reedsmith.com
      Krysia Kubiak, Esquire             Shweta Gupta, Esquire
      Email: kkubiak@lynchweis.com       Email: sgupta@reedsmith.com